**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL E. ASPINALL,                          :

    Plaintiff,                                  :

                     **CIVIL ACTION NO. 3:15-699**

    v.                                          :

                       **(JUDGE MANNION)**

RONALD THOMAS, JASON                          :
THOMAS, JOHN MASCO, and
KEVIN M. BISHOP,                              :

    Defendants                                  :

## MEMORANDUM

Pending before the court is a motion to dismiss the plaintiff's Complaint, (Doc. 1), filed on behalf of defendants Ronald Thomas, Jason Thomas, John Masco, and Kevin M. Bishop, for failure to state a claim upon which relief may be granted. (Doc. 10). For the reasons that follow, the motion to dismiss will be **DENIED**.

## I.    RELEVANT BACKGROUND

The plaintiff, Michael E. Aspinall, served as a correctional officer from 1997 to 2007 and then a sergeant until August 2013,[1] for the Wayne County Correctional Facility in Honesdale, Pennsylvania. (Doc. 1, ¶¶ 1, 9, 50). The

---

[1] His service was continuous except for a period of time from April 2010 to October 2012. (Doc. 1, ¶¶ 14, 19). During this time he was suspended and later terminated as a result of criminal charges brought against him for assault of an inmate. *Id.* ¶ 15. After a jury trial, he was found non-guilty, and he was subsequently reinstated as a sergeant at the Correctional Facility. *Id.* ¶¶ 17-19.

current action concerns the alleged mistreatment and hostile work environment the plaintiff suffered as a result of defendants Ronald Thomas and Jason Thomas' behavior. Both Ronald and Jason Thomas (the "Thomases") were officers at the Correctional Facility. Jason Thomas is the son of Ronald Thomas. *Id.* ¶ 3. The Thomases allegedly always disliked and harassed the plaintiff. However, after the plaintiff was reinstated in October 2012, the Thomases continued to dislike and harass the plaintiff, so much that the plaintiff complained to defendant John Masco, the Deputy Warden of the Correctional Facility. *Id.* ¶ 26. Though the plaintiff was then transferred to a shift "separate and apart from either of the Thomases," the Thomases continued to have contact with and harass the plaintiff. *Id.* ¶¶ 29-30. The harassment included "belittling Plaintiff in front of staff," telling new officers about the plaintiff's past criminal trial, and shouting insults and threats at the plaintiff. *Id.* ¶¶ 30-31.

The plaintiff again complained about the harassment, this time to both defendant John Masco, the Deputy Warden, and defendant Kevin Bishop, the Warden. (Doc. 1, ¶ 32). The Thomases then escalated their harassment against the plaintiff. *Id.* ¶ 33. One specific incident of the escalated harassment occurred when Ronald Thomas followed the plaintiff into his office and then yelled threats at him. Ronald Thomas refused to leave the office, and ultimately the plaintiff was forced to leave his own office. *Id.* ¶ 34. The plaintiff then wrote "a memo detailing the incident to both Mr. Masco and Mr.

Bishop," but "no action was taken." *Id.* ¶ 35. Instead, Jason Thomas became aware of the memo and entered the plaintiff's office to verbally harass and threaten him. *Id.* ¶ 36. Other incidents of harassment occurred, but the plaintiff "continued to fight back, speak out and challenge the abuses . . . to both Mr. Masco and Mr. Bishop." *Id.* ¶ 38. During this time, the Thomases' as well as defendant Bishop's conduct undermined the plaintiff's authority, decision-making, and experience as a correctional officer. (Doc. 1, ¶ 39). Specifically, the Thomases told other correctional officers working during the plaintiff's shift to "ignore him and instead listen to them and do things their way," affecting the plaintiff's ability to delegate tasks and exercise his authority. *Id.* ¶¶ 40-41. The plaintiff submitted over a dozen verbal and written complaints to defendants Masco and Bishop, and the two took no action in response. *Id.* ¶¶ 46-47. Ultimately, the plaintiff was allegedly "forced to involuntarily resign in or around August, 2013," as a result of the harassment and hostile work environment. *Id.* ¶ 50.

The plaintiff filed a Complaint in this court on April 9, 2015 alleging a violation of his First Amendment rights under 42 U.S.C. §1983 as a result of the defendants' retaliatory conduct. (Doc. 1). In Count I of the Complaint, the plaintiff claims that the Thomases' harassment constitutes retaliation in violation of the plaintiff's First Amendment right to free speech. Count II includes allegations against defendants Masco and Bishop under a theory of supervisory liability for their knowledge and acquiescence of the Thomases'

alleged First Amendment retaliation. On May 1, 2015, the defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted. (Doc. 10). The plaintiff filed an opposition to the motion on May 28, 2015. (Doc. 13). The motion is now ripe for the court's review.

## II.   STANDARD OF REVIEW

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   DISCUSSION

The defendants move to dismiss the complaint for failure to state a claim on several grounds. First, the defendants move to dismiss Count I of the complaint stating that the plaintiff failed to allege facts to support all required elements of a §1983 First Amendment retaliation claim. They next move to dismiss Count II on the ground that the facts do not establish Defendants Bishop and Masco's involvement in the alleged constitutional violation. Finally, the defendants move to dismiss the entire complaint because all defendants are entitled to qualified immunity. (Doc. 12, p.13). Each ground will be discussed in turn.

## A.   Count I - First Amendment Retaliation Claim

The Supreme Court has long established that a citizen's ability to participate in free debate on matters of public importance is "the core value of the Free Speech Clause of the First Amendment." Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968); *see also* Connick v. Myers, 461 U.S. 138, 145 (1983); NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982). While a citizen who enters government service must forfeit the scope of some of his freedoms, he is "nonetheless a citizen" who deserves protection from restriction of liberties he enjoys in his capacity as a *private citizen*. Garcetti v.

Ceballos, 547 U.S. 410, 419 (2006). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419. Therefore, "a public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001) (citing Rankin v. McPherson, 483 U.S. 378, 383–84 (1987)).

In order to establish a First Amendment retaliation claim, the plaintiff must first demonstrate that "the conduct which led to the alleged retaliation was constitutionally protected." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). The plaintiff must next demonstrate that he suffered an "adverse action" by the government officials such that "a person of ordinary firmness" would be deterred from exercising his rights. *Id.*; Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Finally, the plaintiff must prove a causal link between the alleged retaliatory conduct and the protected activity. *Rauser,* 241 F.3d at 333; *Lauren W.*, 480 F.3d at 267. Here, the defendant claims that the plaintiff failed to state a First Amendment retaliation claim because the speech at issue is not constitutionally protected, and also because the plaintiff's complaint fails to establish that this speech is related to the alleged retaliatory conduct. (Doc. 12, p. 5-8).

## 1.    Protected Speech Requirement

The preliminary inquiry of whether the speech at issue constitutes

protected speech is a question of law, not fact. Miller v. Clinton Cty., 544 F.3d 542, 548 (3d Cir. 2008). Government employees enjoy the guarantee of free speech so long as they speak as citizens, not employees, and the speech implicates a matter of public concern. Connick v. Myers, 461 U.S. 138, 156 (1983) (quoting Pickering v. Bd. of Educ., 205, 391 U.S. 563, 568 (1968)); Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 465 (3d Cir. 2015); *Miller*, 544 F.3d at 548. "[W]hen public employees make statements pursuant to their official duties, the employees are *not speaking as citizens* for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) (emphasis added). If, however, an employee is speaking as a citizen, the Supreme Court has outlined when such speech is of public concern for First Amendment purposes:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

Snyder v. Phelps, 562 U.S. 443, 453 (2011) (internal quotations omitted). When conducting this inquiry, the court must examine "the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). No one factor is dispositive, and the court must take care to "evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 562

U.S. at 454; Miller v. Clinton Cty., 544 F.3d 542, 550 (3d Cir. 2008) ( "We can not 'cherry pick' something that may impact the public while ignoring the manner and context in which that statement was made or that public concern expressed."). Furthermore, "speech that relates solely to mundane employment grievances does not implicate a matter of public concern." Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 467 (3d Cir. 2015). Should the court determine, pursuant to the foregoing law, that the speech is a matter of public concern, the court must then "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). Ultimately, in order for the employee to prevail, "the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the Pickering balancing test." Dougherty v. Sch. Dist. of Philadelphia, 772 F.3d 979, 987 (3d Cir. 2014) (internal quotations omitted).

In the instant action, the plaintiff was a former correctional officer at the Wayne County Correctional Facility, and therefore, a government employee. (Doc. 1, ¶ 1). The plaintiff alleges that defendants Ronald and Jason Thomas, also employees at the Wayne County Correctional Facility, repeatedly harassed him at work, and when he complained to his supervisors, defendants Masco and Bishop, the harassment subsequently continued and

escalated. (Doc. 1). He further alleges that the complaints to his supervisors constitute protected speech, and that the Thomases' harassment is retaliation. The plaintiff's complaints were oral and written complaints about the Thomases' harassment and misconduct. (Doc.1, ¶¶ 26, 32, 35, 38, 46, 47, 52). The defendants argue that the plaintiff's speech is not constitutionally protected, but rather is nothing more than a private employee grievance. (Doc. 12, p. 7-8). The plaintiff, however, claims that the "complaints are not merely private, work-related grievances, but do, in fact, involve matters of public concern with regard to Plaintiff's ability to supervise inmates at a public correctional facility." (Doc. 13, p. 5).

As stated previously, to determine whether the speech implicates a matter of public concern, the court must look at the content, form, and context of the complaints by looking at the entire record. The plaintiff's complaints were allegedly voiced in response to harassment by the Thomases in the workplace. The Complaint, (Doc. 1), states that the plaintiff "complained to both Mr. Masco and Mr. Bishop over a dozen times," and that the verbal and written complaints described the "discriminatory and hostile work environment created by the Thomases through threats, harassment, bullying and retaliation." (Doc. 1, ¶¶ 46, 47). All the plaintiff's complaints were made solely to defendants Masco and Bishop in a private setting, but a private setting does not automatically foreclose a finding that the speech was of public concern, but it is considered as part of the court's analysis. Garcetti v.

Ceballos, 547 U.S. 410, 427 (2006) (The Supreme Court "reject[s] 'the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly.'" (quoting Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 414 (1979)); *see also* Rankin v. McPherson, 483 U.S. 378, 386, n.11 (1987) ("The private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern."). In addition, the defendants rightly point out that the crux of all the plaintiff's complaints is a personal complaint concerning the hostile work environment created by the Thomases' abuse. (Doc. 12, p. 7-8). However, when put in context, the privately voiced complaints not only focus on the personal attacks the plaintiff suffered, but also relate to the effect that the Thomases' harassment had on the plaintiff's ability to fulfill his duties as a sergeant and maintain order during his shifts at the correctional facility. (Doc. 1, ¶¶ 39-41). In this respect, the public undoubtedly has an interest in the complaints, as their tax dollars fund the correctional institution, and its functioning is central to the country's criminal justice system. *See* Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) ("Residents of the Township clearly had an interest in knowing that their tax dollars were being spent on an asbestos contaminated firestation that endangered the health and lives of its firefighters. . . . Quite simply, the statements regarding exposure of public employees to hazards such as asbestos can be fairly considered as relating to [a] matter of . . .

concern to the community." (internal quotations omitted)). Despite the private and personal nature of the plaintiff's employee complaints, the context and content of the complaint clearly implicate issues of prison security and maintenance that are of significance to the public.

Therefore, the court concludes that the plaintiff's speech in this case implicates a matter of public concern, namely the plaintiff's diminished ability to maintain order and security in the Wayne County Correctional Facility as a result of the Thomases' conduct towards the plaintiff.

Even if the plaintiff's comments implicate a matter of public concern, that does not yet mean that the speech is constitutionally protected speech. The final step in determining whether the plaintiff's complaints are protected speech, requires application of the *Pickering* balancing test discussed above. The plaintiff's interest as a citizen as well as the public's interest in the speech must be balanced against the government's interest "as an employer, 'in promoting workplace efficiency and avoiding workplace disruption.'" Dougherty v. Sch. Dist. of Philadelphia, 772 F.3d 979, 991 (3d Cir. 2014) (quoting McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005)). First, the plaintiff as well as the public have an interest in the speech at issue. The plaintiff has a personal interest in eradicating the hostile work environment created by the Thomases, and both he and the public have an interest in the speech because his complaints shed light onto the productivity and safety of the work environment for corrections officers and inmates at the Wayne

12

County Correctional Facility. However, as the Third Circuit stated in *Munroe*, when the speech at issue is personal in nature, with only a "tangential relationship between the issues of public concern and the [speech's] overall thrust," these factors "so minimize[ ] any public concern in the subject of [the employee's] expression as to tip the First Amendment balance in favor of her employer." Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 468 (3d Cir. 2015) (internal quotations omitted). Thus, if the focus of the speech is personal and private, even if it is related to issues of public concern, the employee's and public's interest in the speech is minimized for the purposes of *Pickering* balancing. The plaintiff in this case privately lodged personal complaints about the Thomases' verbal harassment, and though the complaints implicated issues of public concern tangentially, the court will only afford plaintiff's and public's interest in the speech minimal weight.

As for the employer's interest, most case-law from the Third Circuit regarding this part of the *Pickering* balancing analysis focuses upon whether the speech at issue disrupts or interferes with the working relationship between the employee and his co-workers, the harmony of the work place, and whether the speech serves as an impediment on the performance of the employee's duties. *See, e.g.,* Rankin v. McPherson, 483 U.S. 378, 388 (1987) ("Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest."); Dougherty v. Sch. Dist. of

Philadelphia, 772 F.3d 979, 991 (3d Cir. 2014); Baldassare v. New Jersey, 250 F.3d 188, 198 (3d Cir. 2001). "[T]he state interest element of the test focuses on the effective functioning of the public employer's enterprise." *Rankin*, 483 U.S. at 388. However, despite the focus on whether a disruption has or will occur as a result of the speech, "[i]t is against [Third Circuit] precedent to find against an employee where the disruption 'was primarily the result, not of the plaintiff's exercise of speech, but of . . . attempts to suppress it.'" Dougherty v. Sch. Dist. of Philadelphia, 772 F.3d 979, 992 (3d Cir. 2014) (quoting Czurlanis v. Albanese, 721 F.2d 98, 107 (3d Cir.1983)). In this case, the Thomases' harassment occurred prior to the plaintiff's speech, and the facts in the Complaint demonstrate that the harassment escalated after the complaints. (Doc. 1, ¶ 33). The escalated harassment is the alleged retaliatory conduct. According to the Complaint, the only disruption of working relationships or of workplace harmony is a result of the retaliatory conduct itself, not the speech. *Dougherty*, 772 F.3d at 992. The functioning of the correctional facility was affected primarily by the Thomases' alleged retaliatory actions that created a hostile work environment and disrupted the chain of command amongst correctional officers at the prison. Therefore, the court assigns no weight to the government's interest in maintaining workplace efficiency and avoiding disruption. The government's interest weighed against the employee and public's interest, tips ever so slightly in favor of the plaintiff at this stage of the litigation. Thus, the court concludes that the plaintiff's

speech is constitutionally protected, and not, as the defendants claim, an attempt to "constitutionalize an employee grievance." (Doc. 12, p.8).

### 2.    Causal Link Between Retaliatory Conduct and Speech

Next, the defendants contend that the alleged retaliatory conduct by the Thomases was not related to the plaintiff's speech. (Doc. 12, p. 6). In defense of this assertion, the defendants solely state the following:

> Mr. Aspinall was harassed by the Thomases to the point that this[sic] First Amendment Rights were violated because he complained about being harassed by the Thomases. This obviously makes no logical sense.

(Doc. 12, p. 7). The defendants appear to argue that the harassment, or retaliatory conduct, began prior to the alleged protected speech, and therefore did not occur as a result of the speech. That point may have been well taken except that the defendants fail to note that the Complaint includes facts that establish an escalation in harassment after the plaintiff lodged oral and written complaints about the Thomases' conduct. (Doc. 1, ¶¶ 32-34); (Doc. 13, p. 5). The Complaint also includes a factual allegation that "Jason Thomas became aware of the Plaintiff's . . . memo, and, in response, stormed into the sergeant's office" and proceeded to subject the plaintiff to a barrage of insults and offensive statements. (Doc. 1, ¶¶ 35-36). Thus, facts set forth in the Complaint sufficiently establish a causal relationship between the plaintiff's protected speech and the subsequent harassment by the Thomases. Because the Thomases subjected the plaintiff to similar harassment prior to the speech, the court notes that only the harassment that occurred after the

plaintiff lodged complaints and only misconduct determined an escalation of the previously described harassment has been considered at this stage of the litigation for this First Amendment retaliation claim.

In conclusion, the court finds that the plaintiff's Complaint includes factual allegations sufficient to state a plausible claim for First Amendment retaliation against the Thomases. The court will therefore deny the defendants' motion to dismiss for failure to establish a First Amendment retaliation claim on the grounds that the speech at issue was not constitutionally protected and that the speech was not related to the alleged retaliatory conduct.

## B.    SUPERVISORY CAPACITY OF DEFENDANTS MASCO AND BISHOP

The defendant further moves to dismiss the plaintiff's claims against Masco, Deputy Warden, and Bishop, Warden, on the ground that the "Complaint fails to allege sufficient facts from which to infer that the the[sic] Warden and Deputy Warden . . . were aware of, but indifferent to, the violation of the Plaintiff's First Amendment rights." (Doc. 12, p. 9).[2]

Section 1983 of the United States Code provides a cause of action when two elements are satisfied: (1) "the conduct complained of was

---

[2] The defendants' point heading in section 2 of the argument section of the brief refers to claims and parties that are completely distinct from and not present in this case. (Doc. 12, p. 8). Though the remainder of this section contains the correct party names and claims, the court suggests more care in the future as the error lended confusion to both the plaintiff and the court.

committed by a person acting under color of state law"; and (2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Furthermore, in a §1983 action, a government official may not be held liable for the unconstitutional actions of their subordinates under a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012). Government officials are only liable for their own unconstitutional conduct. *Iqbal*, 556 U.S. at 676.

The Third Circuit has identified two methods by which a government official may be found liable under a theory of supervisory liability. First, "liability may attach if [a supervisor], with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (internal quotations omitted), *rev'd on other grounds sub nom.* Taylor v. Barkes, 135 S. Ct. 2042 (2015). Second, a supervisor will be held liable if "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (internal quotations omitted). The defendants' interpretation of the applicable law with regard to supervisory liability is only partially accurate and is incomplete. The defendants assert that "supervisory liability under §1983 may be imposed where the supervisor was personally involved in the alleged

constitutional violation, or where the supervisor was deliberately indifferent to the risk of a constitutional violation." (Doc. 12, p. 10 (citing A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). The case that the defendants rely upon, *A.M. v. Luzerne County Juvenile Detention Center*, does not at all state what the defendants contend, and, *is consistent* with the two abovementioned methods set forth in *Barkes*. Therefore, the defendants' argument that the plaintiff failed to allege that Mr. Masco and Mr. Bishop "were personally involved in violating Aspinall's First Amendment rights" is a flawed and incomplete analysis of whether the two are liable under a theory of supervisory liability.

The court will determine whether the plaintiff pled facts sufficient to establish supervisory liability by applying the two methods outlined above rather than the defendants' interpretation of the law. First, to determine whether the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm," Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), the court must apply a four part test, as follows:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

766 F.3d 307, 317 (3d Cir. 2014) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. Pa. 1989); Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)).[3] The plaintiff has failed to allege any facts regarding a policy or practice that defendants Masco and Bishop, as supervisors, have in place or failed to employ. Therefore, the facts fail to establish supervisory liability under the first method.

As stated previously, the second method provides that if a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct," then he may be held liable. *Barkes, Inc.*, 766 F.3d at 316; *see also* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal

---

[3] Since the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Circuit Courts have attempted to identify its effect on establishing supervisory liability under the first method outlined above. The Third Circuit has held that "under *Iqbal*, the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." Barkes v. First. Corr. Med., Inc., 766 F.3d 307, 319 (3d Cir. 2014). The *Barkes* court interpreted the intent necessary for supervisory liability in an Eighth Amendment context, but explicitly declined to address "the question whether and under what circumstances a claim for supervisory liability derived from a violation of a different constitutional provision remains valid." *Id.* at 320. Because this case does not involve an Eighth Amendment claim and the Third Circuit has yet to address what level of intent is necessary to establish supervisory liability in a First Amendment retaliation action, this court will continue to apply the abovementioned four-part test established in *Sample* and adopted in *Barkes* to determine whether a policy or practice that caused the constitutional violation subjects an official to supervisory liability*.*

involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). In the defendants' brief, they state that the "Complaint does not allege that the Warden and Deputy Warden were personally involved," and therefore the two defendants cannot be liable under a theory of supervisory authority. (Doc. 12, p. 10). The defendants, however, fail to address all prongs of the second method of supervisory liability that establish requisite "personal involvement." Specifically, the defendants do not examine whether the plaintiff sufficiently alleged facts establishing that defendants Masco and Bishop had *knowledge of and acquiesced to* the Thomases' unconstitutional conduct. The plaintiff alleges that both Masco and Bishop, as Deputy Warden and Warden of the correctional facility, have supervisory authority over and were in charge of the Thomases. (Doc. 1, ¶¶ 60-61). In addition, the Complaint also includes numerous factual allegations establishing that the plaintiff informed the two supervisors of the Thomases' harassment and alleged retaliatory conduct. *Id.* ¶¶ 35, 46, 47, 65. Taken to be true, these facts sufficiently demonstrate that Masco and Bishop had knowledge of the Thomases' retaliatory conduct. The plaintiff further alleges, despite their knowledge of the harassment and hostile work environment created by the Thomases, Masco and Bishop did not take any action. (Doc. 1, ¶¶ 35, 38, 47, 48, 68). This inaction coupled with Mr. Masco and Mr. Bishop's actual knowledge of the complaints sufficiently establishes

20

knowledge and acquiescence, as required to satisfy the second method of supervisory liability. A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. Pa. 2004) ("A.M.'s evidence that they took little or no action to protect him is sufficient to present a genuine issue of material fact as to their knowledge of and acquiescence in the conduct of the child-care workers."). Therefore, the plaintiff has alleged sufficient facts to support a claim against defendants Masco and Bishop in their supervisory role, to withstand the defendants' motion to dismiss.

## C.    QUALIFIED IMMUNITY FOR ALL DEFENDANTS

The defendants finally argue that all claims should be dismissed because all defendants are entitled to qualified immunity. This argument rests upon the defendants' belief that the Thomases' workplace harassment clearly "did not impugn any constitutional right." (Doc. 12, p. 14).

The common law privilege of qualified immunity protects public officials who have undertaken discretionary acts from suit "to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). But the immunity may be overborne under a two-prong analysis. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Saucier v. Katz, 533 U.S. 194, 201–02, *abrogated in part by* *Pearson*, 555 U.S. 223; Curley v. Klem, 499 F.3d 199,

206 (3d Cir. 2007); *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).

Courts must ask: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 232; *Wright*, 409 F.3d at 600; and (2): "whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 232; *Wright*, 409 F.3d at 600. The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 201 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). If there was a violation of a constitutional right and the right was clearly established, then qualified immunity does not apply. Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case." *Pearson*, 555 U.S. at 236.

The defendants' argument here focuses on the first prong of the inquiry: whether their conduct violated a constitutional right. As the foregoing analysis demonstrates, this court has already concluded that the plaintiff's Complaint includes sufficient factual allegations to establish a First Amendment violation. Therefore, the Complaint satisfies the first prong of the qualified immunity inquiry, and the court need not reiterate its previous findings.

As for the second prong–whether the right was clearly established–the defendants simply state that "there is no conceivable way" the defendants

could have known that the Thomases' harassment as well as Masco's and Bishop's inaction constituted a violation of the plaintiff's First Amendment rights. (Doc. 12, p. 14). Without providing any case-law or further support to demonstrate whether the right was clearly established, the defendants urge this court to conclude that the defendants deserve qualified immunity status. The Supreme Court has established, and this Circuit has affirmed, the principle that the defendant bears the burden of demonstrating qualified immunity, as it is a defense. Crawford-El v. Britton, 523 U.S. 574, 595 (1998); Thomas v. Independence Twp., 463 F.3d 285, 293 (3d Cir. 2006) ("[T]he burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff."). Since the defendants have not provided any support to prove the second prong of the qualified immunity inquiry, the court concludes that they are not entitled to qualified immunity at this stage in the litigation.

Because the facts alleged in the Complaint establish that the defendants' conduct violated the plaintiff's First Amendment rights, fulfilling the first prong of qualified immunity in favor of the plaintiff, and the defendants have failed to demonstrate that the right was not clearly established, the court cannot conclude that the defendants are entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, the court concludes that the plaintiff's Complaint includes factual allegations sufficient to state a plausible First

Amendment retaliation claim against both the Thomases and defendants Masco and Bishop. Thus, the defendants' motion to dismiss will be **DENIED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 12, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0699-01.wpd